## C. L. SUMMERS, Adm'r., &c., v. L. C. McKAY and GEO. F. SHEPHERD.

Where a note was given in 1862 in consideration of the loan of Confede-- rate money, and in 1863 the payee endorsed it to the plaintiff in pay- ment for a tract of land : *Held*, in a suit against the payee and the maker, that the *scale* to be applied was the value of Confederate money in 1862, and not that of the land afterwards purchased by the payee.

CIVIL ACTION, tried before *Mitchell, J.*, at Spring Term 1870, of IREDELL Court.

The plaintiff declared upon a note for $1,000, dated May 26, 1862, given for Confederate Treasury notes, by the defendant McKay to the defendant Shepherd, and endorsed by the latter, October 13, 1863, to the plaintiff. Upon the trial the defendants offered to prove that the endorsement was made in consideration of a tract of land bought by Shepherd of the plaintiff at an administration sale, and that the value of such land was $80. To this the plaintiff ob- jected, but the evidence was admitted by the Court.

Verdict and Judgment accordingly; and the plaintiff ap- pealed.

*W. P. Caldwell*, for the appellant.
*Furches*, contra.

Since the passage of the *scale* laws, a plaintiff in cases like the present is put upon his general assumpsit, or equity; and can recover only the value of what was sold, that being the real consideration : See *Laws* v. *Rycroft, ante* 100.

SETTLE, J. McKay, the maker of the bond, certainly has no right to complain, if he is required to stand by his obligation, as interpreted by the ordinance of October 18th 1865, and the acts of 1866, chapters 38 and 39. He put

his negotiable paper upon the market, and it is a novel idea that he can afterward discharge it by paying the price which a third party may have paid for it. Yet this is the argument, and it is contended that as the payee Shepherd, assigned this bond to the plaintiff in consideration of, and in payment for, a tract of land, the obligation of the maker is thereby changed from what it was when made in May 1862, and what it continued to be up to the assignment in October 1863; and that he is only liable for the value of the land.

Instead of reducing, or in any way changing the original liability of the maker, the payee, by his endorsement, identified himself with the prior contract and became a surety for the same. The effect of his endorsement was not to drag the maker down to his level, but to raise himself up to that of the maker.

It was said upon the argument, that it would be a hard case, to hold the endorser liable for more than the value of the land; if that be conceded, still it is not so hard a case as thousands of others, where sureties have to pay the debts of their principals, and never receive a cent for their own benefit.

It is evident that the endorser took the risk of assigning this bond for the land, upon the idea that the maker was good, and stood, between him and all danger. In this calculation he, like many others who have become sureties, was mistaken.

All that the plaintiff asked, was the scale of the bond, and interest from the time it fell due.

To this he was clearly entitled, and there was error in the instruction of his Honor to the contrary.

PER CURIAM. *Venire de novo.*