ELI W. SANDERS *vs.* HENRY JARMAN.

The rule that an endorser, on default of the maker of a note, becomes liable for the amount of the note, is not of universal application to notes endorsed during the late war; but the contract of endorsement in such cases is affected by the legislation relating to the *scale of depreciation*, &c.

Where a note for $1,200, given in September, 1863, for property worth $300, was endorsed shortly thereafter by the payee, in consideration of property of the value of $1,200, and since the war the endorsee discharged the maker, in writing, upon payment of $310; *Held*, that the effect of the release was not to discharge the endorser, but he is still liable for the difference, upon an implied contract in the endorsement that, if the maker failed to do so, he would pay the endorser the value of what he received for the note.

[*Summers* v. *McKay* and *Sheppard*, 64 N. C. 555, commented on and distinguished.]

ACTION OF DEBT, commenced in the Superior Court of CARTERET, in 1866, and heard before *Clarke, J.,* at Fall Term, 1871, upon a *case agreed.*

The defendant was sued as endorser of a note for $1,200, given to him September 7th, 1863, by one Hill King, and payable one day after date. The consideration of the note was a pair of mules sold by Jarman to King, worth about $300. The defendant was indebted to the plaintiff in the sum of $600, due by note given before the war, and in the latter part of 1863 offered to pay the debt in Confederate money. Sanders, the plaintiff, refused to take Confederate money, but agreed to make an exchange of notes; and thereupon the defendant endorsed to him the note for $1,200, given by King, and took in exchange his note to Sanders for $600, and other notes, given before the war, to the amount of $1,200. Sanders demanded payment of the note so endorsed to him, of King, and upon being informed what the consideration of the note was, accepted $310 from him, credited the amount on the note, and executed a covenant to him that he should not be held further responsi-

ble on the same. This was done November 3d, 1866. The defendant relied upon the release to King as a discharge to himself. It was agreed that, if his Honor should be of opinion with the defendant, a judgment of non-suit should be rendered against the plaintiff, otherwise he should give judgment in favor of the plaintiff, for the balance of principal and interest, deducting the credit of $310.

His Honor gave judgment against the plaintiff, and he appealed.

*Green,* for the plaintiff.
*Haughton,* for the defendant.

PEARSON, C. J. We should concur with his Honor in the conclusion at which he arrived, if the case was governed by the rules of law, applicable to bills of exchange and promissory notes; but we are of opinion that the legislation called for by the condition of the country after the war, has the effect to make "the rules of law" inapplicable to the case, and it must be governed by rules of justice and equity, as set out in the several statutes in reference to the scale and the value of the consideration of the contract.

The endorser of a promissory note makes a conditional contract, that he will pay the note, provided it is not paid by the maker, and notice is given in reasonable time; (the demand on the maker and notice is not necessary by statute in regard to promissory notes.)

Suppose a note for $1,200, in consideration of Confederate money, to be given in 1862—it is endorsed in 1863, in consideration of Confederate notes, the holder will recover of the maker by the scale of 1862; but if he sues the endorser he will recover by the scale of 1863, on the ground that the contract of the endorser was made in 1863, and he should, in justice, only pay the value of the Confederate notes received by him. This violates the rule by which an endorser, on default of the

maker, becomes liable for the amount of the note; but it is a clear inference or corollary from the legislation in regard to debts contracted during the war.

So, in our case. The contract of Jarman, construed in reference to this legislation, was that, unless the maker paid the amount of the note, he (Jarman) would pay the value of the consideration received by him, which, it seems, was a $600 note of Jarman, given in 1860, or 1861, and some other notes and Confederate money, to make out the balance.

The maker, when called on, paid $310, the value of two mules, for which the note was given; that let him off, and, according to the ordinary rules of law, it also discharged the endorser. Such would have been the legal effect, had the maker paid the amount of the note in good money; for it was a condition of the contract of endorsement, that the endorser was not liable, *provided* the face of the note was paid in good money; but that is out of the question. The maker falls back upon his right to pay only $310, the value of the mules. This does not discharge the endorser, for the face of the note has not been paid; so he is bound by his contract of endorsement to pay $1,200; but then he may, in his turn, claim the right to pay only the value of the consideration which was received by him, to wit, the $600 note, &c. In *Summers* v. *McKay and Sheppard*, 64 N. C. 555, the action was against the maker jointly with the endorser. The main purpose was to fix the liability of the maker, and it did not occur, either to the Court or to the counsel, that, under the legislation in reference to debts contracted during the war, the liability of the endorser was not the same as that of the maker, and that the endorser could insist that his liability was to be measured by the scale at the date of the endorsement, which was the date of his contract, or by the value of the consideration received by him.

There is error. Judgment for balance, $1,116, as by case agreed.

PER CURIAM.                              Judgment reversed.